Ruffin, C. J.
 

 The point, is as to the legality of the sheriff’s sale, in respect of the place at which it was made. To the clearer understanding of the subject, it seems necessary to advert to the several statutes which provide for the sale of land under execution in the State generally, and also in this particular county of Pasquo-
 
 *435
 
 tank. By the act of 1777, executions were made to run against land as well as goods. But the only regulation it contains, respecting the sale of land, is to require it to be advertised at least forty days; and, in the subsequent act of 1794, it is provided at what hours of the day sales under execution shall commence. Thus stood the law until 1830, when an act passed, c. 32, which directs all sales to be made at the court-house of the respective counties, on the last Thursday of every month. By an act of the succeeding year, 1S21, c. 19, it is again enacted, that sales shall be at the court-house; and instead of the last Thursday of the month, that they may be on any Monday in any week. Finally, the general law upon this subject was settled by the act of 1822, c. 25, which alters the time to the same Monday in the month as that on which tire County Court is held in the several counties, and again enacts that the court-house shall be the place of sale ; and it concludes with a clause repealing all laws within its meaning and purview. If that law governed the present case, of course, the sale under which the plaintiff claims, would be illegal and void. But in the next year the act, 1823, c. 74, passed, which is set out in the case; and the object and effect of it was, as to the counties mentioned in it, to restore the law to the state in which it was before the act of 1822. And, as it is a rule of construction, that a statute, repealed by another, is revived by a repeal of the repealing statute, the act of 1823 goes on further in a proviso, that it shall not be so construed as to revive the two acts of 1821 and 1820, which required the sale of land to be at the court-house* It is thus seen, that the act of 1823 clearly repeals the three acts of the three preceding years, as far as concerns Pasquotank and the other counties mentioned in it. ■ Consequently the sale of land there is now regulated by the acts of ’94 and ’77, and the common law — unless, indeed, the act of 1823 is not, itself, in force, as contended on the part of the defendant. But upon that point the opinion
 
 *436
 
 of the Court is against the defendant. It is true, that the second section of the
 
 Revised Statutes,
 
 c. 1, repeals all acts passed before the session of 1836, and not there reenacted. But that is with the several provisos and exceptions contained in the six succeeding sections; among which is the following in s. 8, “.that no act of a private or local nature, and no act granting privileges or imposing duties in any particular county inconsistent with the general provisions of law, shall be construed to be thereby repealed,” It is very clear, that the act of 1823 is within that saving, as intended by the legislature. It had been printed and published, among the laws passed that year, as a private act; and, besides, it is plainly local in its nature, being confined to particular counties and with provisions, in respect to them, different from the general or public law. Then, as the acts of ’94 and ’77 say nothing as to the place of sale, this controversy depends upon the, enquiry, whether at common law the sale of land under a
 
 fieri facias
 
 must be on the land itself, or be made
 
 bona fide
 
 at any other fit place in the county.
 

 It is certain, as we all know, that before the act of 1820 the constant course was for the sheriff to sell at the places and days, which he judged best suited the convenience and interest of the parties. Sometimes sales were made on the premises. But often they were not. If there were several tracts of land to be sold, and the sale began on one of them, it proceeded there as to all, although the others might be in a different part of the county. Indeed, the most usual place of sale was the court-house and during term time ; and, especially, if the land was of much value, because generally that afforded the longest time to the debtor to raise the money without selling his property, and, if the sale became unavoidable, it would be made when there would, probably, be the largest assemblage of bidders. The case of
 
 Lanier
 
 v.
 
 Stone,
 
 1 Hawks 329, furnishes an instance in 1809 of a sale at the court-house at the return term of the execution ; and it was the gen
 
 *437
 
 eral practice. It was never understood, that a sale of land was within the reasons of the rule, which requires personal chattels to be present. The sheriff acquires no property in the land. He does not seize it, nor deliver the possession to the purchaser; but merely sells the right and leaves the purchaser to recover the possession by action, if not delivered to him by the debtor. Nor can bidders, during the short progress of a sale, judge by inspection of the extent, condition, or value of large landed properties as they can of the several articles of personalty. Until the present case wo never heard it supposed, that prior to 1820 the place of sale was not in the sound discretion of the sheriff, as he might judge best for the persons concerned. It was not contended that this sale was not fairly conducted ; and therefore we hold it to be effectual, and affirm the judgment.
 

 Pee. Curiam. Judgment affirmed.-